# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF MISSOURI
# SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) |
| v. | ) Case No. 18-03120-01-CR-S-BP |
| CHARLES KESSLER, | ) |
| Defendant. | ) |

## REPORT & RECOMMENDATION OF U.S. MAGISTRATE JUDGE

Before the Court is Defendant Charles Kessler's Motion to Suppress Evidence (doc. 30), which has been referred to the undersigned for preliminary review pursuant to 28 U.S.C. § 636(b). Defendant moves to suppress all evidence obtained as a result of the search warrant executed by the Douglas County Sheriff's Office ("DCSO") on January 5, 2017. The undersigned held an evidentiary hearing on the Motion on September 10, 2019. (*See* Doc. 39.) Defendant was present with his attorney, Stuart Huffman, and the United States Government was represented by Assistant United States Attorney Byron Black. (*Id.*) The Court heard testimony from Chris Degase, the Sheriff for the DCSO. (*Id.*) For the reasons below, it is **RECOMMENDED** that the Motion (doc. 30) be **DENIED**.

## I. Findings of Fact[1]

On December 30, 2016, the Douglas County Sheriff, Chris Degase ("Degase"), received an anonymous phone call that a man named "Chuckie" Kessler lived in Rome at the end of Highway A, was involved in a large-scale drug distribution ring in Wright County, and was dealing in pounds of methamphetamine. Chuckie was also known as Charles Kessler, the defendant. The

---

[1] The facts set forth herein are taken from the testimony adduced and the exhibits admitted at the hearing on the instant Motion. The Government's exhibit index appears as doc. 37. The Defendant's exhibit index appears as doc. 38. The hearing transcript appears as doc. 39.

1

female caller identified other subjects involved in the Wright County drug activity and reported Kessler was selling methamphetamine in exchange for stolen property. She gave Degase driving directions to Kessler's residence, described his trailer was at the end of Highway A and was positioned behind another trailer, disclosed that the property was owned by a man named "Bob" who lived "up the road," and stated she had personally observed one pound of methamphetamine in Kessler's trailer on December 27, three days earlier. She also shared information about Kessler's probation status,[2] identified Kessler's probation officer as Pam Burnett, knew Kessler had failed several urinalysis tests, and disclosed Kessler intended to abscond to Illinois, providing detailed information about Kessler's family in Illinois.

Degase corroborated this information. He contacted the probation and parole office, learned Kessler resided at 7860 County Road 436 and followed the driving directions provided by the caller, which took him to this address. Degase researched County Assessor records, which confirmed a man named Robert Twedt owned the property at the 7860 address and another property "up the road," corroborating the caller's report that Kessler's residence was located on property owned by "Bob" who also lived up the street. Degase contacted the Wright County Sheriff, Glenn Adler, who confirmed some of the "subjects" identified by the caller were involved in illegal drug activity in Wright County but could not identify Kessler. Degase also confirmed Kessler's probation and parole officer was Pam Burnett,[3] who disclosed she had personal knowledge that Kessler's family was in Illinois but could not confirm if Kessler had any intent of absconding or disclose Kessler's drug test results.

Deputy Kobby Roberts received a second call on January 1, 2017.[4] Degase was unaware whether this was the same or a different caller. The caller reported Kessler drove an extended cab

---

[2] Degase acknowledged that Kessler's probation status was available on public court records.
[3] Degase acknowledged that Ms. Burnett was the only probation and parole officer in Douglas County.
[4] This is incorrectly noted as 2016 in the affidavit.

2

Chevy pickup and reported a girl named Erin Nichols was residing with Kessler, "was on methamphetamine really bad," and had outstanding warrants for her arrest. On January 4, 2017,[5] Degase obtained a Missouri State Highway Patrol report by Trooper Mendez who reported he conducted a traffic stop of Kessler and Nichols on November 29, 2016. Nichols, who was a passenger in Kessler's black Cadillac, was arrested for possession of methamphetamine during the stop. Degase confirmed that Kessler has a black Cadillac registered in his name and was also aware from prior contact that Kessler drove a truck. He drove by Kessler's residence and observed a Chevy extended cab pickup in the driveway, further corroborating the caller's information.

Degase sought a search warrant for Kessler's residence at 7860 County Road 436. (*See* Doc. 37, Gov. Ex. 1.) Though not included within the affidavit, Degase testified he had been an officer for approximately 23 years with narcotic-based training and had "a lot of experience in New Mexico working close to the border." He also testified he had attended numerous high-risk warrant service classes, served as an instructor for the State of Missouri and had served in excess of 200 warrants since 2003. (*Id.*) In support of the warrant, Degase prepared an affidavit outlining the information gathered from the two anonymous callers and his efforts to corroborate their reports. Although the affidavit did not specifically identify the names of the individuals reportedly involved in illegal drug activity in Wright County, it did note Sheriff Adler had confirmed the "subjects" stated by the caller were involved in drug activity. Degase also included Kessler's criminal history, including his prior felony conviction for possession of a controlled substance.

Degase presented the affidavit and warrant to the prosecutor of Douglas County, who reviewed and signed it, and then presented it to Judge Elizabeth Bock, who also reviewed and signed it. Neither the prosecutor nor the judge noticed the affidavit incorrectly referred to dates in

---

[5] The affidavit incorrectly notes this as 2016.

2016. Degase testified the investigation did not include stale facts, explaining he incorrectly used the year 2016 when referring to January events in the affidavit due to the change in the calendar year during the investigation. He testified those events happened in 2017 but did not advise the judge of this mistake prior to executing the warrant.[6]

Pursuant to the warrant, DCSO officers, including Degase, executed the search of 7860 County Road 436 in Douglas County, Missouri on January 5, 2017. Although the warrant return stated they searched "7846 Co. Rd. A-436, Ava, Mo. 65608," Degase testified this was a typographical error because the 7846 address does not exist. He asserted they searched the 7860 address and further pointed out the correct address was included in the affidavit along with the copy of the general warranty deed proving a detailed description of the location to be searched.

Kessler was present and cooperative during the search. Degase handcuffed him and placed him in the living room but did not draw his weapon during the encounter. Deputy Wallace located a safe next to the bed and asked Kessler for the combination. After providing Kessler with a *Miranda* warning, Kessler provided the lock combination and admitted the deputies would find "quite a bit" of methamphetamine in the safe. The deputies found a substantial amount of crystal substances that field tested positive for methamphetamine, as well as spoons, a set of digital scales and various drug paraphernalia. Based on his training and experience, Degase determined the amount of the crystal substances and other items indicated the distribution of controlled substances. Without moving anything, Degase also plainly observed a gun sitting on the headboard. Kessler stated he did not know the handgun was there, and that the gun belonged to his neighbor. Wallace secured the weapon based on Degase's knowledge that Kessler had a prior felony conviction.

---

[6] Given the investigation began in December of 2016 and the affidavit is written in chronological order, the undersigned finds Degase's explanation credible and that the January dates stated in the affidavit occurred in 2017.

The deputies seized all the aforementioned evidence and escorted Kessler to the Sheriff's office. At the office, Kessler mentioned he had some text messages on his phone. Degase testified they spoke briefly about the possibility of keeping any gun charges on the state level if Kessler cooperated. Degase asked for consent to look at the phone and Kessler voluntarily showed Degase some of the messages. On November 6, 2018, a grand jury charged Defendant with possession with intent to distribute five grams or more of methamphetamine, unlawful possession of a firearm and possession of a firearm in furtherance of a drug trafficking crime. (Doc. 1.)

## II. Conclusions of Law

The Fourth Amendment protects citizens "against unreasonable searches and seizures." U.S. Const. amend. IV; *United States v. Va Lerie*, 424 F.3d 694, 701 (8th Cir. 2005). Generally, evidence found because of an unlawful search or seizure, and the fruits therefrom, cannot be used against a defendant and must be suppressed. *United States v. Riesselman*, 646 F.3d 1072, 1078-79 (8th Cir. 2011). Defendant moves to suppress evidence seized following the execution of the search warrant, arguing the warrant lacked probable cause. He also claims his detention was unlawful and that law enforcement exceeded the scope of the warrant and moves to suppress any statements taken as fruit of the unlawful search. The Government responds the warrant was supported by probable cause and any evidence was lawfully seized pursuant to a properly executed search warrant. The Court takes up the arguments below.

### A. The Warrant was Supported by Probable Cause

Defendant first argues the information provided by the anonymous callers was not sufficiently reliable to support a probable cause determination. Probable cause exists if there is a "fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238 (1983). Where probable cause is based on information supplied by an informant, the core question is whether the information is reliable. *United States v. Buchanan*,

5

574 F.3d 554, 561 (8th Cir. 2009) (citing *United States v. Williams*, 10 F.3d 590, 593 (8th Cir. 1993)). A judge issuing a warrant determines probable cause based on the totality-of-the-circumstances using a common sense rather than a hypertechnical approach. *Buchanan*, 574 F.3d at 561 (*citing Gates*, 462 U.S. at 238). A totality-of-the-circumstances analysis prohibits an "excessively technical dissection of informants' 'tips'" that views "bits and pieces of information in isolation." *Buchanan*, 574 F.3d at 562-63; *see also Gates*, 462 U.S. at 234-35. A reviewing court gives great deference to the issuing judge's determination of probable cause and simply ensures the judge had a "substantial basis" for concluding probable cause existed. *United States v. Caswell*, 436 F.3d 894, 897 (8th Cir. 2006) (quoting *Gates*, 462 U.S. at 238).

Though Defendant claims the affidavit failed to aver anything about the callers' identities, basis of knowledge, honesty or reliability, and provided only "innocent details" that did not corroborate any criminal activity, the undersigned finds the information provided by the anonymous callers was sufficiently reliable to support probable cause. Where, as here, "an informant's information is at least partly corroborated . . . 'attacks upon credibility and reliability are not crucial to the finding of probable cause.'" *United States v. Gladney*, 48 F.3d 309, 313 (8th Cir. 1995) (*quoting United States v. Humphreys*, 982 F.2d 254, 259 (8th Cir.1992)). A suitably corroborated anonymous tip, along with other specific circumstances, including the "richness and detail of a firsthand observation," can demonstrate sufficient indicia of reliability. *Buchanan*, 574 F.3d at 561-62 (*citation omitted*). Further, a great degree of corroboration is not necessary and need not "extend to illegal activity." *United States v. Reivich*, 793 F.2d 957, 960 (8th Cir. 1986). "Even the corroboration of minor, innocent details" can provide sufficient indicia of reliability to support probable cause. *Buchanan*, 574 F.3d at 562.

Contrary to Defendant's claims, neither the anonymous callers' identities nor surveillance corroborating ongoing illegal activity was indispensable to establishing probable cause. Here, the

facts averred in the affidavit demonstrated the callers' reliability and provided much more than "innocent details" generally available to the public. While the first caller provided general information, such as Defendant's address and the name of his probation officer, she also personally observed one pound of methamphetamine within Defendant's residence, provided detailed directions to Defendant's residence, described where Defendant's trailer sat on the property, noted a man named Bob owned Defendant's property, knew where Bob resided, knew that Defendant's family resided in Illinois, and had knowledge that Defendant had allegedly failed his drug tests, all of which suggests the caller had contact with Defendant and knew personal facts about him and his involvement in a crime. She further reported that Defendant would trade stolen items for methamphetamines and was associated with specific individuals in a drug ring in Wright County, information that someone familiar with Defendant would know. A second caller also identified Defendant's trailer in Rome, reported his association with a known methamphetamine user, Erin Nichols, knew Nichols had a warrant, and identified Defendant's extended cab Chevy pickup.

Degase independently corroborated some of the information from these callers, confirming Defendant's residence, probation status, family in Illinois, and association with Erin Nichols, and observed an extended cab Chevy pickup parked in front of Defendant's residence. Degase's corroboration of these minor details demonstrated the reliability of the anonymous tips. Moreover, Degase's knowledge of Defendant's criminal history for controlled substance violations further bolstered the reliability of the anonymous tips. *See United States v. Solomon*, 432 F.3d 824, 828 n. 2 (8th Cir. 2005) (finding that an affidavit's recitation of a defendant's criminal history increases the credibility of a tip) (citation omitted).

Based on the above, the issuing judge had a substantial basis for concluding that probable cause existed for the issuance of the search warrant. Considering the totality of circumstances, the specific factual information set forth in the affidavit, including the firsthand observation of drugs

inside the place to be searched, the detailed firsthand knowledge reported by the first anonymous caller, Degase's partial corroboration of details from both callers and Defendant's known criminal history, supported the kind of practical, common-sense decision sufficient to find a fair probability that methamphetamine and evidence of drug distribution would be found in Defendant's residence.

### B. *Leon* Good Faith Exception

The Government argues, and the undersigned agrees, that even assuming probable cause was lacking, the *Leon* good-faith exception would apply to preclude suppression of the evidence. The exclusionary rule is intended to deter police misconduct and does not apply where "the police acted 'in objectively reasonable reliance'" of a search warrant issued by a judge or magistrate. *Herring v. United States*, 555 U.S. 135, 142 (2009) (quoting *United States v. Leon*, 468 U.S. 897, 922 (1984)). Evidence seized as a result of such good-faith reliance will thus be admitted unless:

> (1) the supporting affidavit or testimony includes a false statement made knowingly and intentionally or with reckless disregard for the truth to mislead the issuing judge; (2) the issuing judge wholly abandoned his judicial role in issuing the warrant; (3) the affidavit in support of the warrant is so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable; or (4) the warrant is so facially deficient that no police officer could reasonably presume the warrant to be valid.

*United States v. Ortiz-Cervantes*, 868 F.3d 695, 702-03 (8th Cir. 2017) (internal quotes omitted); *see also Leon*, 468 U.S. at 923. Notwithstanding its exceptions, the good-faith inquiry "is confined to the objectively ascertainable question whether a reasonably well-trained officer would have known that the search was illegal in light of all the circumstances." *Herring*, 555 U.S. at 145 (internal quotes omitted). Circumstances include "what the affiant knew but did not include in the application for the warrant." *United States v. Thurman*, 625 F.3d 1053, 1057 (8th Cir. 2010).

Here, Degase had sufficient reasons to believe Defendant resided at the specific address to be searched and would find evidence of illegal drug activity in his residence. He knew Defendant had a criminal history for drug possession and distribution and corroborated many of the details

8

provided by anonymous callers who reported Defendant's involvement in drug activity. One caller personally observed methamphetamine in Defendant's residence and provided specific information that only someone familiar with Defendant would know, including that he "trades stolen things for methamphetamine," failed his drug tests and has family in Illinois. Another caller disclosed his association with another known drug user who was arrested for possession of methamphetamine while in Defendant's car. Based on these facts, a police officer's belief that probable cause existed to search Defendant's home would not be "entirely unreasonable."

Given Degase's prior experience in "developing probable cause," Degase had no reason to question both the prosecutor's approval and issuing judge's determination of probable cause in this case, despite his failure to include his training or experience in the warrant. The undersigned does not find that a "reasonably well-trained officer would have known that the search was illegal in light of all the circumstances." Further, Defendant does not argue, nor does the undersigned find that Degase knowingly and intentionally misled the issuing judge, that the issuing judge wholly abandoned his judicial role in issuing the warrant, or that the warrant was so facially deficient that no police officer could reasonably presume the warrant to be valid. As such, even if the warrant lacked probable cause, Degase objectively and reasonably relied on a search warrant issued by a neutral magistrate, and the evidence should not be suppressed.

### C. Defendant's remaining arguments lack merit

Defendant, in the preface to his brief, inartfully asserts other arguments he never supports with legal analysis. Although Defendant argues his detention violated the Fourth Amendment and that law enforcement unlawfully exceeded the scope of the warrant, he only specifically contests the validity of the warrant. Other than stating the Court should suppress the evidence seized and statements taken as a result of an unlawful warrant, Defendant does not separate the detention from the execution of the warrant, articulate how the search exceeded the scope of a valid warrant, or

specifically argue a *Miranda* violation. Despite his disorganized briefing, defense counsel clarified during the hearing his theory regarding the above issues was contingent on the finding that the "warrant, in and of itself, was unconstitutional," and that "everything . . . flows from the ability to even be there in the first place to search the home with the search warrant," limiting his position to whether the evidence obtained or statements made were fruit of the poisonous tree. Because the undersigned finds the warrant established probable cause, Defendant's detention was lawful and the evidence and statements obtained were not the fruit of an unlawful search.

Even assuming, as the Government points out, this Court were to consider whether the seizure of the gun exceed the scope of the warrant, this argument would fail. The gun was clearly observed in plain view while law enforcement was in a place they were lawfully allowed to be during the execution of a valid warrant, and, given Degase's knowledge of Defendant's criminal history, the incriminating nature of the gun was readily apparent. *United States v. Darr*, 661 F.3d 375, 379 (8th Cir. 2011) (*citing United States v. Bustos–Torres*, 396 F.3d 935, 944 (8th Cir.2005)). The Court notes that during the hearing, Defense counsel suggested the search of the phone could present a scope issue. However, the phone was searched pursuant to Defendant's consent at the Sheriff's office, subsequent to the execution of the warrant, and Defendant does not argue he never provided consent or that his consent was involuntary. Accordingly, the undersigned finds the above arguments lacks merit. As a final note, the Defendant also briefly refers to a *Franks* issue in his briefing. However, during the evidentiary hearing, counsel withdrew this argument.

### III. Recommendation

For the foregoing reasons, it is hereby **RECOMMENDED** that Defendant's Motion to Suppress Evidence (doc. 30) be **DENIED**.

/s/ *David P. Rush*
DAVID P. RUSH
DATE: January 10, 2019    UNITED STATES MAGISTRATE JUDGE