# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF MISSOURI
# SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| v. | ) No. 18-03120-01-CR-S-BP |
| | ) |
| CHARLES D. KESSLER, | ) |
| | ) |
| Defendant. | ) |

## ORDER ADOPTING MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION AND DENYING DEFENDANT'S MOTION TO SUPPRESS

Pending is Defendant Charles Kessler's motion to "suppress any evidence obtained from the illegal detainment and subsequent search of" Kessler on January 5th, 2017. (Doc. 30.) On September 10, 2019, a hearing was held on the motion to suppress. (Doc. 39.) On January 10, 2020, the Honorable Magistrate Judge David P. Rush issued a report recommending that the Court deny Kessler's motion to suppress. (Doc. 40.) Kessler timely objected. (Doc. 43.) The Court has reviewed the record *de novo* and agrees with the recommendations of Judge Rush. Kessler's motion to suppress is **DENIED**.

## I. BACKGROUND

The Court adopts the reports and recommendation in its entirety, including its recommended findings of fact. In summary, on December 30, 2016, the Douglas County Sheriff, Chris Degase, received an anonymous phone call. (Doc. 40 p. 1.)[1] The anonymous caller stated that a man named "Chuckie" Kessler lived in Rome, Missouri at the end of Highway A and was involved in a large-scale methamphetamine distribution ring in Wright County. (*Id.*) The caller identified other individuals involved in the Wright County drug activity and "reported Kessler was

---

[1] All page numbers refer to the Court's CM/ECF system and may not match the document's original pagination.

selling methamphetamine in exchange for stolen property." (*Id.* at 2.) The caller stated that she had personally observed one pound of methamphetamine at Kessler's residence on December 27, 2016 (only three days earlier). (*Id.*) The caller also provided Sheriff Degase with driving directions to Kessler's residence, noting that Kessler lived in a trailer that was located behind another trailer on the property. (*Id.*) She further stated that the property was owned by "Bob," who lived "up the road." (*Id.*) Finally, the caller was knowledgeable about Kessler's status as a probationer, that Kessler's probation officer was Pam Burnett, that Kessler had failed several urinalysis tests, and reported that Kessler was intending to abscond to Illinois where members of his family resided. (*Id.*)

Sheriff Degase corroborated much of the anonymous caller's information. He contacted the probation office, which reported that Kessler resided at 7860 County Road 436. (*Id.*) The driving directions provided by the caller took Sheriff Degase to this address. (*Id.*) Sheriff Degase confirmed that a man named Robert Twedt owned the property at 7860 County Road 436 and another property "up the road," which corroborated "the caller's report that Kessler's residence was located on property owned by 'Bob' who also lived up the street." (*Id.*) Sheriff Degase also contacted the Sheriff in Wright County, who confirmed that some of the individuals identified by the caller were involved in illegal drug activity in Wright County. (*Id.*) Sheriff Degase further established that Kessler's probation officer was Pam Burnett, who confirmed that Kessler had family in Illinois. (*Id.*) Burnett could not confirm Kessler's intent to abscond to Illinois or disclose drug testing results. (*Id.*)

On January 1, 2017, Deputy Kobby Roberts received a call from an anonymous caller.[2] The caller reported that Kessler drove a Chevy extended cab pickup and that a woman named Erin

---

[2] Sheriff Degase was unable to confirm whether the first and second caller were the same person. (Doc. 40, p. 2; Doc. 39, p. 43.)

Nichols was residing with Kessler. (*Id.* at 3.) The caller stated that Nichols "was on methamphetamine really bad," and had outstanding warrants for her arrest. (*Id.*) This information was also corroborated by Sheriff Degase. On January 4, 2017, Sheriff Degase obtained a Missouri State Highway Patrol report of a traffic stop of Kessler and Nichols on November 29, 2016.[3] During the stop, Nichols was a passenger in Kessler's black Cadillac and was arrested for possession of methamphetamine. (*Id.*) Sheriff Degase confirmed that Kessler had a black Cadillac registered in his name and knew "from prior contact" that Kessler also drove a truck. (*Id.*) When Sheriff Degase drove by Kessler's residence, he observed a Chevy extended cab pickup in the driveway. (*Id.*)

Sheriff Degase applied for a search warrant for Kessler's residence at 7860 County Road 436. (*Id.*; *see also* Doc. 32-1.) Sheriff Degase presented the search warrant and an affidavit "to the prosecutor of Douglas County, who reviewed and signed it, and . . . to Judge Elizabeth Bock, who also reviewed and signed it."[4] (Doc. 40, p. 3.) Several Douglas County officials, including Sheriff Degase, executed the search warrant of 7860 County Road 436 on January 5, 2017.[5] (*Id.* at 4.) During the search, Deputy Taylor Wallace found a safe next to Kessler's bed. (*Id.*) After providing Kessler with a *Mirada* warning, Kessler disclosed the safe's combination and told the deputies that they would find "quite a bit" of methamphetamine in the safe.[6] (*Id.*) Within the safe the deputies found approximately forty-four grams of methamphetamine, spoons, a set of digital scales, and other drug paraphernalia. (*Id.*) Based on Sheriff Degase's training and experience, he

---

[3] As noted by Judge Rush, the affidavit incorrectly notes Sheriff Degase obtained this report in 2016, rather than 2017. However, Sheriff Degase testified that this was a typing error "because this was right after the first of the year." (Doc. 39, pp. 16, 55–56.)
[4] The Honorable Elizabeth A. Bock, Associate Circuit Judge for Douglas County.
[5] Judge Rush notes that the warrant return stated the officers searched "7846 Co. Rd. A-436 Ava, Mo. 65608." (Doc. 40, p. 4; Doc. 32-1, p. 7.) However, Sheriff Degase testified that this was a typo and that 7846 County Road A-436 does not exist. (Doc. 39, pp. 20, 34.)
[6] The motion to suppress raised an issue about the timeliness of the *Miranda* warning, but Kessler did not object to Judge Rush's resolution of this issue. (*See* Doc. 30, p. 5; Doc. 40 pp. 9–10.)

determined that the amount of methamphetamine together with the other items indicated the distribution of controlled substances. (*Id.*)

Sheriff Degase also observed a gun, sitting in plain view, on Kessler's headboard. (*Id.*) Kessler claimed that he did not know the gun was there and that the gun belonged to his neighbor. (*Id.*) Sheriff Degase was aware that Kessler had a prior felony conviction, so the weapon was secured. (*Id.*)

Kessler was subsequently escorted to the Sheriff's Office. At the office, Kessler mentioned that he had text messages on his phone related to other drug transactions. (*Id.*) Sheriff Degase discussed with Kessler the possibility of keeping any gun charges "on the state level" if Kessler "cooperated through the investigation." (*Id.* at 5; Doc. 39, pp. 59–61.) Sheriff Degase asked for consent to look at the text messages on Kessler's phone, and Kessler allowed him to view the messages. (*Id.*)

Kessler was subsequently charged with possession of a controlled substance with intent to distribute, possession of a firearm in furtherance of the alleged distribution, and being a felon in possession of a firearm. (Doc. 1.) On June 24, 2019, Kessler filed a motion to "suppress any evidence obtained from the illegal detainment and subsequent search of" Kessler on January 5th, 2017. (Doc. 30.) On January 10, 2020, Judge Rush issued his report recommending that the Court deny Kessler's motion to suppress. (Doc. 40.) For the following reasons, the Court adopts Judge Rush's Report and **DENIES** the motion to suppress.

## II. DISCUSSION

The Court adopts Judge Rush's recommendation it its entirety; this discussion is meant only to augment his legal analysis.

The Fourth Amendment affords the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures" and states that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. CONST. amend. IV. "[T]he Fourth Amendment is enforceable against the States through the Fourteenth Amendment." *Camara v. Mun. Court of City & Cty. of San Francisco*, 387 U.S. 523, 528 (1967) (*citing Ker v. State of California*, 374 U.S. 23, 30 (1963)).

"Probable cause to issue a search warrant exists when an affidavit [or testimony] in support of the warrant sets forth sufficient facts to establish that there is a fair probability that contraband or evidence of criminal activity will be found in the particular place to be searched." *United States v. Stewart*, 761 F. App'x 659, 661 (8th Cir. 2019) (*citing United States v. Proell*, 485 F.3d 427, 430 (8th Cir. 2007) (internal quotation marks omitted); *United States v. Davis*, 471 F.3d 938, 946 (8th Cir. 2006)). "When reviewing a probable cause finding, the duty of [this Court] is simply to ensure that the judicial officer that authorized the search had a 'substantial basis for concluding that probable cause existed' and we 'must accord substantial deference to the finding of an issuing judicial officer.'" *United States v. Buchanan*, 574 F.3d 554, 561 (8th Cir. 2009) (*quoting United States v. Williams*, 10 F.3d 590, 593 (8th Cir. 1993); *Illinois v. Gates*, 462 U.S. 213, 236 (1983)) (cleaned up).

Where probable cause is based on information supplied by an informant, as is the case here, the "core question . . . is whether the information is reliable." *Williams*, 10 F.3d at 593. "Information may be sufficiently reliable to support a probable cause finding if the person providing the information has a track record of supplying reliable information, or if it is corroborated by independent evidence. *Id.* (*citing Draper v. United States*, 358 U.S. 307, 313

5

(1959)). The Eighth Circuit has noted that there are "indicia of reliability in the richness and detail of a first hand observation." *Buchanan*, 574 F.3d at 562 (cleaned up). Information may be considered reliable so long as it is at least "partially corroborated" by other sources; in fact, "[e]ven the corroboration of minor, innocent details can suffice to establish probable cause." *Id.*

However, even if the search warrant is ultimately found to be defective, evidence obtained pursuant to that warrant will not be suppressed "if the executing officer's reliance upon the warrant was objectively reasonable." *United States v. Stewart*, 761 F. App'x 659, 661 (8th Cir. 2019); *United States v. Leon*, 468 U.S. 897, 919–20 (1984) ("In short, where the officer's conduct is objectively reasonable, excluding the evidence will not further the ends of the exclusionary rule in any appreciable way; for it is painfully apparent that . . . the officer is acting as a reasonable officer would and should act in similar circumstances.") (quotations omitted.) As discussed below, the Court agrees with Judge Rush that the issuing judge had a substantial basis for concluding that probable cause existed for the issuance of the search warrant. And even if probable cause was lacking, the officers' reliance on the warrant was objectively reasonable.

Kessler objects to Judge Rush's report and recommendation in several respects. (Doc. 43.) Kessler's primary argument is that "Sheriff Degase did not have probable cause based on the anonymous call and verification of non-criminal information to request a search warrant for the address of Mr. Kessler." (Doc. 43, p. 1.) Kessler supports this argument by pointing out that (1) the tip "did not indicate that Mr. Kessler intended [to] engage in future criminal activity," and (2) Sheriff Degase did not perform a controlled purchase or trash pull at the suspect location. (Doc. 43, pp. 3–4.) For the reasons discussed below, the Court does not find Kessler's arguments persuasive.

First, the initial caller's tip stated that Kessler was seen with one pound of methamphetamine in his residence and that Kessler sold methamphetamine for stolen property. (Doc. 40 pp. 1–2.) These facts indicate that Kessler was likely to sell methamphetamine in the future. Moreover, even if the tip did not state that Kessler intended to commit a crime in the future, the tip plainly stated that Kessler had recently committed or was presently committing a crime, that is, possessing a substantial amount of methamphetamine. Second, although a controlled purchase or trash pull may provide facts to establish probable cause that a defendant is engaged in criminal activity, neither procedure is necessary to establish probable cause, and Kessler offers no authority to the contrary. The Court agrees with Judge Rush that based on all of the other information provided by the caller that was corroborated by Sheriff Degase, "the issuing judge had a substantial basis for concluding that probable cause existed for the issuance of the search warrant." (Doc. 40, p. 7.)

Kessler also argues that Sheriff Degase's affidavit "alleged insufficient facts to give rise to the requisite level of probable cause for issuing a search warrant[.]" (Doc. 43, p. 4.) Specifically, Kessler claims the fact that Erin Nichols was living with Kessler was not properly corroborated by the Missouri State Highway Patrol report of the traffic stop of Kessler and Nichols. Kessler correctly contends that the report did not indicate that Mr. Kessler was involved in criminal activity; only Nichols was arrested for possession of methamphetamine. Kessler also points out that the report did not state that Kessler and Nichols lived together. Nonetheless, the report corroborated the fact that Kessler and Nichols associated with each other. The other facts reported by the second caller were also corroborated: Sheriff Degase observed a Chevy extended cab pickup in Kessler's driveway, corroborating the caller's identification of Kessler's vehicle; and the report stated that Nichols was in possession of methamphetamine at the time of the traffic stop,

corroborating the fact that Nichols may be "on methamphetamine really bad." Taken together, these corroborated facts demonstrate the reliability of the caller's statement that Kessler and Nichols lived together. *See Williams*, 10 F.3d at 593 ("If information from an informant is shown to be reliable because of independent corroboration, then it is a permissible inference that the informant is reliable and that therefore other information that the informant provides, though uncorroborated, is also reliable.") Moreover, even if Kessler and Nichols were not living together – and the statement made by the second caller was false – the remaining facts in the affidavit and warrant application would support a finding of probable cause that Kessler was likely to be engaged in criminal activity.

Kessler also argues that "[t]he Leon Good Faith exception does not apply for the reasons as set forth in paragraph 8." (Doc. 43, p. 4.) However, Kessler does not offer any support or explanation for this argument; in fact, paragraph 8 of his objection to the report and recommendation is limited to the quoted sentence above. (*See id.*) The Court agrees with Judge Rush that "even if the warrant lacked probable cause, Degase objectively and reasonably relied on a search warrant issued by a neutral magistrate, and the evidence should not be suppressed." (Doc. 40, p. 9.)

Finally, Kessler claims that various information in the affidavit was "stale." (Doc. 43, pp. 3–5.) As noted by Judge Rush, Sheriff Degase "testified the investigation did not include stale facts, explaining he incorrectly used the year 2016 when referring to January events in the affidavit due to the change in the calendar year during the investigation." (Doc. 40, p. 4.) Sheriff Degase also testified that "those events happened in 2017 but did not advise the judge of this mistake prior to executing the warrant." (*Id.*) The Court agrees with Judge Rush that a reasonable officer was entitled to rely on this information because, "[g]iven the investigation began in December of 2016

and the affidavit is written in chronological order . . . Degase's explanation [is] credible and . . . the January dates stated in the affidavit occurred in 2017." (Doc. 40, p. 4, n.6.)

### III. CONCLUSION

For these reasons, the Court adopts the Report and Recommendation of Judge Rush and **DENIES** Kessler's motion to suppress. (Doc. 30.)

**IT IS SO ORDERED.**

                                                            /s/ Beth Phillips
                                                            BETH PHILLIPS, CHIEF JUDGE
**DATE**: February 21_, 2020                   UNITED STATES DISTRICT COURT